UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ROBERT D. SANGO #252200,

       Plaintiff,

v.                                                                          Case No.  2:16-cv-18
                                                                           HON.  GORDON J. QUIST

UNKNOWN SOHLDEN et al.,

       Defendants.
_____/


### REPORT AND RECOMMENDATION

       Plaintiff Robert D. Sango, filed this *pro se* civil rights action pursuant to 42

U.S.C. § 1983 against Defendants Unknown Sohlden, Todd Bastian, Bruce Dessellier, and Tom

LaPlante.  There are two motions pending in this matter. First, Plaintiff has filed a motion for a

temporary restraining order.  (ECF No. 19.)  Defendants have responded.  (ECF No. 24.)

Second, Defendants have filed a motion to revoke Plaintiff's *in forma pauperis* status, or in the

alternative, to dismiss based on failure to exhaust administrative remedies or qualified immunity.

(ECF No. 21.)  Plaintiff has responded.  (ECF No. 26.)  This matter is now ready for decision.

       Plaintiff alleges that on January 23, 2016, Defendant Dessellier announced over a

loud speaker:  "prisoner Sango . . . stop sending snitch kites to staff about what Bloods and Vice

Lords were left on the yard."  PageID.2.  Following this incident, Plaintiff asked Defendant

Sohlden for a grievance and expedited legal mail form.  PageID.2.  Defendant Sohlden told

Plaintiff that "he wasn't going to go out of his way to do that."  PageID.2.  Plaintiff then told

Defendant Sohlden that the grievance forms were on a cart in the showers and that Defendant

Sohlden could get the form when he took the prisoners to shower.  PageID.2.  Defendant

Sohlden responded by saying that Plaintiff would not be allowed to shower.  PageID.2.

Defendant Sohlden also shouted: "if you didn't get all this 'gang shit' started manipulated [these]

young guys to fight, we would be at normal operation."  PageID.2.  Plaintiff alleges that other

prisoners could hear Defendant Sohlden yell this statement.  PageID.2.

In addition, Plaintiff alleges that Defendant Bastian told other prisoners that

Plaintiff was the one who started the Bloods and Vice Lords conflict because Plaintiff filed a

lawsuit against Defendant Bastian.  PageID.2.  Plaintiff further alleges that Defendant Bastian

would not provide him with a grievance form, and Defendant LaPlante stopped responding to

Plaintiff's grievances for four months.  PageID.3.

It is difficult to ascertain what claims Plaintiff is asserting in the complaint.  In the

opinion of the undersigned, Plaintiff's complaint alleges four claims:  (1) an Eighth Amendment

claim against Defendants Dessellier, Sohlden, and Bastian for making comments to other

prisoners that Plaintiff was a snitch and that Plaintiff started the gang war between the Bloods

and Vice Lords; (2) an Eighth Amendment claim against Defendant Sohlden for denying

Plaintiff a shower; (3) a retaliation claim against Defendant Bastian for refusing to provide

Plaintiff with grievance forms because Plaintiff filed a lawsuit against him; and (4) a due process

claim against Defendant LaPlante for not responding to Plaintiff's grievances.[1]

The first pending motion in this case is Plaintiff's motion for a temporary

restraining order.  This is Plaintiff's third motion for injunctive relief.  (ECF No. 10, 12.)  The

---

[1] In Plaintiff's Response to Defendants' Motion to Dismiss, Plaintiff attempts to characterize his allegations regarding the grievance process as a retaliation claim.  PageID.185-186.  Defendants argue that Plaintiffs allegations amount to a due process claim.  PageID.107.  After construing the allegations in the complaint in favor of the Plaintiff, Plaintiff alleges a retaliation claim against Defendant Bastian.  However, Plaintiff's complaint cannot be read to include a retaliation claim against Defendant Sohlden.  Plaintiff does not allege any facts that show Defendant Sohlden was retaliating against Plaintiff for utilizing his right to access the courts.

previous two motions were denied.  (ECF No. 18, 25.)  In his third motion, Plaintiff again

requests that Defendant Bastian not come within one-hundred feet of him and not work in

Plaintiff's housing unit.  Plaintiff alleges that Defendant Bastian refuses to transfer any prisoners

in the level five security unit to a lower-level security unit until a prisoner stabs Plaintiff.  This

same allegation was made in Plaintiff's second motion for a temporary restraining order.  (ECF

No. 12.)

The district court has discretion when determining whether to issue injunctive

relief.  *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987).

The Sixth Circuit has explained that a court confronted with a request for injunctive relief must

consider and balance four factors:

1. [T]he likelihood that the party seeking the preliminary
   injunction will succeed on the merits of the claim;

2. [W]hether the party seeking the injunction will suffer
   irreparable harm without the grant of the extraordinary relief;

3. [T]he probability that granting the injunction will cause
   substantial harm to others; and

4. [W]hether the public interest is advanced by the issuance of the
   injunction.

*Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994) (citing *Keweenaw Bay Indian Comm'y

v. State*, 11 F.3d 1341, 1348 (6th Cir. 1993)).  "These factors are not prerequisites to the grant or

denial of injunctive relief, but factors that must be carefully balanced by the district court in

exercising its equitable powers."  *McCreary v. Wertanen*, No. 2:08-CV-277, 2009 WL 1873997,

at *1 (W.D. Mich. May 5, 2009) (citing *Washington*, 35 F.3d at 1099).

In addition, where a prison inmate seeks an order enjoining state prison officials,

the court is required to proceed with the utmost care and must recognize the unique nature of the

prison setting.  *See Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).  It has also been

remarked that a party seeking injunctive relief bears a heavy burden of establishing that the

extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Checker*

*Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969);

*see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1989).

    With regard to the first prong of establishing injunctive relief, Plaintiff has the

initial burden of showing a substantial likelihood of success on the merits of his § 1983 action.

*See NAACP v. City of Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).  In this case, Plaintiff has

not met the initial burden.  Plaintiff alleges that Defendants are labeling him as a "snitch" and

interfering with his access to the courts.  However, Plaintiff has merely made allegations against

Defendants and has not shown a likelihood of success on the merits.  Plaintiff has also not shown

that he will suffer irreparable harm without an issuance of an injunction.  Moreover, the public

interest and the interests of third parties weigh against the granting of an injunction.  Plaintiff

requests that certain prison officials should not be allowed to work in his housing units.  This

Court should not interfere with the management of prisoners.  The MDOC determines how to

staff the prisons and where corrections officers are assigned.  Any intrusion by federal courts into

the administration of states courts is disruptive and not in the public interest.  Therefore, in the

opinion of the undersigned, Plaintiff's motion for a temporary restraining order should be denied.

    The second motion pending in this case is Defendants' motion to revoke

Plaintiff's *in forma pauperis* status, or in the alternative, to dismiss based on failure to exhaust

administrative remedies or qualified immunity.  First, Defendants argue that Plaintiff's *in forma*

*pauperis* status should be revoked because he has three strikes against him.  Plaintiff has been an

active litigant in the federal courts of Michigan.  There is no dispute that Plaintiff has three

strikes against him.  *See Sango v. Lewis et al.*, No. 1:14-CV-342 (W.D. Mich. July 18, 2014);

*Sango v. Huss*, No. 1:14-CV-2 (W.D. Mich. June 12, 2014); *Sango v. Hammond et al.*, No. 1:14-

CV-283 (W.D. Mich May 6, 2014); *Sango v. Novak*, No. 1:14-CV-343 (W.D. Mich Apr. 23,

2014).  However, Plaintiff argues that he should be allowed to proceed *in forma pauperis*

because his allegations meet the imminent danger exception to the three-strikes rule.

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321

(1996), which was enacted on April 26, 1996, amended the procedural rules governing a

prisoner's request for the privilege of proceeding *in forma pauperis*.  As the Sixth Circuit has

stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners – many of

which are meritless – and the corresponding burden those filings have placed on the federal

courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  For that reason, Congress put

into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint.

*Id.*  For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to

proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in

28 U.S.C. § 1915(b).  The constitutionality of the fee requirements of the PLRA has been upheld

by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA

by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files

meritless lawsuits.  Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a
> judgment in a civil action or proceeding under [the section
> governing proceedings *in forma pauperis*] if the prisoner has, on 3
> or more prior occasions, while incarcerated or detained in any
> facility, brought an action or appeal in a court of the United States
> that was dismissed on the grounds that it is frivolous, malicious, or
> fails to state a claim upon which relief may be granted, unless the
> prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The statutory restriction "[i]n no event," found in § 1915(g), is express and

unequivocal.  The statute does allow an exception for a prisoner who is "under imminent danger

of serious physical injury."  The Sixth Circuit has upheld the constitutionality of the three-strikes

rule against arguments that it violates equal protection, the right of access to the courts, and due

process, and that it constitutes a bill of attainder and is *ex post facto* legislation.  *Wilson v.*

*Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998); *accord Pointer v. Wilkinson*, 502 F.3d 369, 377

(6th Cir. 2007) (citing *Wilson*, 148 F.3d at 604-06); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82

(9th Cir. 1999); *Rivera v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112

F.3d 818, 821-22 (5th Cir. 1997).

In *Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580 (6th Cir. 2013),  the

Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held
> that "the threat or prison condition must be real and proximate and
> the danger of serious physical injury must exist at the time the
> complaint is filed."  *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th
> Cir. 2008) (internal quotation marks omitted).  "Thus a prisoner's
> assertion that he or she faced danger in the past is insufficient to
> invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med.*
> *Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of
> past dangers are insufficient to invoke the exception."); *Percival v.*
> *Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past
> danger will not satisfy the 'imminent danger' exception."); *cf.*
> [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)]
> (implying that past danger is insufficient for the imminent-danger
> exception).

> In addition to a temporal requirement, we have explained that
> the allegations must be sufficient to allow a court to draw
> reasonable inferences that the danger exists.  To that end, "district
> courts may deny a prisoner leave to proceed pursuant to § 1915(g)
> when the prisoner's claims of imminent danger are conclusory or
> ridiculous, or are clearly baseless (i.e. are fantastic or delusional
> and rise to the level of irrational or wholly incredible)."  *Rittner*,
> 290 F. App'x at 798 (internal quotation marks and citations

> omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that
> are conclusory, ridiculous, or clearly baseless are also insufficient
> for purposes of the imminent-danger exception.").

*Id.* at 585.  A prisoner's claim of imminent danger is subject to the same notice pleading

requirement that applies to prisoner complaints.  *Id*.  Consequently, a prisoner must allege facts

in the complaint from which the court could reasonably conclude that the prisoner was under an

existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove

those allegations.  *Id.*

In this case, Defendants argue that Plaintiff failed to allege that he was in

imminent danger of serious physical injury at the time the complaint was filed.  Defendants note

that this case is similar to one of Plaintiff's previous cases, *Sango v. Bastian*, No. 2:16-CV-15

(W.D. Mich), where Plaintiff was denied from proceeding *in forma pauperis*. In both cases,

Plaintiff alleges that Defendant Bastian told a group of prisoners that Plaintiff was snitching on

the Bloods and Vice Lords. Moreover, in this case, Plaintiff states that prison officials are taught

not to make these statements because it "could put [Plaintiff] in danger."  PageID.2  In his

response brief, Plaintiff also alleges that the fact that he continues to request injunctive relief

shows that he is in imminent danger.  However, the allegations in Plaintiff's motions for

injunctive relief occurred after he filed his complaint and do not prove that he was in imminent

danger at the time the complaint was filed.  Because Plaintiff's allegations are conclusory and

speculative, Plaintiff has not met the imminent danger standard as set forth by the Sixth Circuit

in *Vandiver*. Therefore, in the opinion of the undersigned, Plaintiff's *in forma pauperis* status

should be revoked.

Next, Defendants argue that this case should be dismissed because Plaintiff failed

to exhaust administrative remedies.  The Case Management Order in this case specifically stated

that "[t]he affirmative defense of failure to exhaust administrative remedies under 42 U.S.C. §

1997e(a) may not be raised by motion to dismiss, as plaintiff has no obligation to plead

exhaustion." (ECF No. 14, PageID.51.) Nonetheless, Defendants argue that this is a unique

situation because Plaintiff filed his complaint a day after he was denied a grievance form, and

Plaintiff did not make any additional attempts to obtain grievance forms. Thus, Defendants

assert, Plaintiff has not shown that the grievance system was effectively "unavailable" to him.

*See Ross v. Blake*, 136 S. Ct. 1850 (2016). However, as the Case Management Order stated, a

plaintiff has no obligation to plead exhaustion. Therefore, Plaintiff was not required to plead that

the administrative remedies were "unavailable" to him. This argument should be asserted at the

summary judgment stage.

Finally, Defendants argue that Plaintiff's Eighth Amendment claims and due

process claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). [2]

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to

state a claim upon which relief can be granted." "A claim is facially plausible when a plaintiff

'pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged.'" *Coley v. Lucas Cty.,* 799 F.3d 530, 537 (6th Cir. 2015)

(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). In deciding a motion to dismiss for failure

to state a claim, the court must construe the complaint in the light most favorable to the plaintiff

and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of

Am.*, 773 F.3d 741, 750 (6th Cir. 2014). Although a *pro se* complaint is "to be liberally

construed" and "must be held to less stringent standards than formal pleadings drafted by

---

[2] It should be noted that Defendants did not move to dismiss Plaintiff's retaliation claim against Defendant Bastian. As discussed above, Defendants characterized Plaintiff's claim against Defendant Bastian regarding the denial of grievance forms as a due process claim. However, in the opinion of the undersigned, Plaintiff is alleging that Defendant Bastian would not provide grievance forms to Plaintiff because Plaintiff filed a lawsuit against him.

lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), "basic pleading essentials" still apply. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990).

In this case, Defendants argue that they are entitled to qualified immunity because their conduct did not violate any clearly established law.  "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Phillips  v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?"  *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *cf. Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the two-part test is no longer considered mandatory; thereby freeing district courts from rigidly, and potentially wastefully, applying the two-part test in cases that could more efficiently be resolved by a modified application of that framework).

First, Defendants argue that Plaintiff's Eighth Amendment claims against Defendants Dessellier, Sohlden, and Bastian for labeling Plaintiff as a "snitch" in front of other prisoners should be dismissed because Plaintiff has not alleged any actual harm.  In support of their argument, Defendants cite *Gibbs v. Ball*, No. 07-CV-15462-DT, 2009 WL 331604, at \*4 (E.D. Mich. Feb. 11, 2009), where the court found that although being labeled a snitch could pose a threat to an inmate's health and safety in violation of the Eighth Amendment, a prisoner's

failure to allege a physical injury defeats the Eighth Amendment claim. However, it is well-

established that "prison officials have a duty . . . to protect prisoners from violence at the hands

of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). For example, in *Leary v.*

*Livingston Cty.*, 528 F.3d 438, 442 (6th Cir. 2008), the plaintiff asserted a deliberate indifference

claim alleging a prison guard told other prisoners that the plaintiff was convicted of raping a

nine-year old girl. In denying the defendant's motion for summary judgment based on qualified

immunity, the Sixth Circuit found that the plaintiff alleged a sufficiently serious harm because

other inmates might assault Plaintiff if they learned he raped a young girl. *Id.* In this case,

Plaintiff has alleged a similar harm—other inmates may attempt to assault him for snitching.

Therefore, in the opinion of the undersigned, Plaintiff's Eighth Amendment claim against

Defendants Dessellier, Sohlden, and Bastian for labeling Plaintiff a "snitch" in front of other

prisoners alleges a violation of clearly established law.

Second, Defendants argue that Plaintiff's Eighth Amendment claim against

Defendant Sohlden for not allowing Plaintiff to take a shower should be dismissed. The denial

of adequate access to shower facilities in prison may be violation of a prisoner's Eighth

Amendment rights. *See Johnson v. Hardin County, Ky.*, 908 F.2d 1280, 1284 (6th Cir. 1990).

However, the denial of a shower to a prisoner for a short period of time, in this case on one

occasion, fails to establish that a prisoner was subjected to a deprivation of "the minimal

civilized measure of life's necessities." *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)

(finding "conditions that cannot be said to be cruel and unusual under contemporary standards

are not unconstitutional); *see also Abernathy v. Perry*, 869 F.2d 1146, 1149 (8th Cir. 1989)

(finding that providing an inmate with only two showers per week was not an Eighth

Amendment violation). Therefore, in the opinion of the undersigned, Plaintiff's Eighth

Amendment claim against Defendant Sohlden for not allowing Plaintiff to take a shower should be dismissed.

Third, Defendants argue that Plaintiff's due process claim against Defendant LaPlante should be dismissed.  Plaintiff alleges that Defendant LaPlante has not processed any of Plaintiff's grievances in four months.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x. 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x. 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x. 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendant LaPlante's conduct did not deprive him of due process.  Therefore, in the opinion of the undersigned, Defendant LaPlante is entitled to qualified immunity and Plaintiff's due process claim should be dismissed.

Accordingly, in the opinion of the undersigned, Plaintiff's motion for a temporary restraining order should be denied.  (ECF No. 19.)

In addition, Defendants' motion to revoke Plaintiff's *in forma pauperis* status, or in the alternative, to dismiss based on failure to exhaust administrative remedies or qualified immunity should be granted in part and denied in part.  (ECF No. 21.)  Plaintiff's *in forma pauperis* status should be revoked.  If the court accepts this recommendation to revoke in forma

pauperis status, Plaintiff shall have 28 days to pay the entire $400.00 filing fee in order to avoid dismissal without prejudice.

It is further recommended that Plaintiff's complaint should not be dismissed for failure to exhaust administrative remedies.  Plaintiff's Eighth Amendment claim against Defendant Sohlden for not allowing Plaintiff to shower should be dismissed.  Plaintiff's due process claim against Defendant LaPlante for not responding to Plaintiff's grievances should be dismissed. Therefore, Plaintiff has two remaining claims: (1) an Eighth Amendment claim against Defendants Sohlden, Bastian, and Dessellier; and (2) a retaliation claim against Defendant Bastian.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      December 7, 2016                          */s/ Timothy P. Greeley*
                                                                        TIMOTHY P. GREELEY
                                                                        UNITED STATES MAGISTRATE JUDGE